# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Don Newcome Conley,<br><br>           Plaintiff,<br><br>v.<br><br>City of Minneapolis; Robert Elmers, Minneapolis Police Officer; Thomas Peterson, Minneapolis Police Officer; Timothy Savior, Minneapolis Police Officer; Jeffrey Miller, Minneapolis Police Officer; Aaron Morrison, Minneapolis Police Officer; and Michael Primozich, Minneapolis Police Officer;<br><br>           Defendants. | Civ. No. 07-2379 (JRT/JJK)<br><br>**REPORT AND RECOMMENDATION** |

Albert I. Usumanu, Albert Usumanu Law Office, counsel for Plaintiff.

Tracey N. Fussy, Minneapolis City Attorney's Office, 333 South 7th Street, Suite 300, Minneapolis, MN, 55402, counsel for Defendants.

This matter is before this Court for a report and recommendation to the District Court on Defendants' Motion for Summary Judgment (Doc. No. 18), pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1.  For the reasons stated below, this Court recommends that the Defendants' motion be granted.

## I.   BACKGROUND

This case arises out of an incident on April 19, 2001.  On that day, Minneapolis police officers, including the individual Defendants,[1] observed a confidential reliable informant complete a controlled buy of illegal drugs from Plaintiff.  (Doc. No. 20, Aff. of Tracey Fussy ("Fussy Aff.") ¶ 3, Ex. B at 8.)  Following the controlled buy, Defendant Robert Elmers, a Minneapolis Police Officer, attempted to stop a vehicle occupied by Plaintiff and three other individuals.  (*Id.* ¶ 3, Ex. B at 11.)  When Elmers attempted to effect the stop, Plaintiff and the other three individuals attempted to flee in the vehicle.  (*Id.*)  Shortly thereafter, Plaintiff exited the vehicle and attempted to flee on foot.  (*Id.*)

As Plaintiff attempted to flee, Elmers stopped his squad car, jumped out of the vehicle, and released a police dog for the purpose of apprehending Plaintiff.  (*Id.*)  Elmers did not provide a verbal warning when he released the police dog.  (Doc. No. 1, Compl. ¶ 5.)  At that time, an unmarked vehicle from the Narcotics Unit of the Minneapolis Police Department pulled in front of Elmers's squad car, apparently preventing Plaintiff's escape.  (Fussy Aff. ¶ 3, Ex. B at 11.)  The narcotics officer got out of the unmarked vehicle to assist in the arrest.  The dog then caught Plaintiff, and began biting Plaintiff's leg.  (*Id.*)

Elmers ordered Plaintiff to lie on the ground, and Plaintiff laid down on the ground with his hands out.  (*Id.*)  Plaintiff's right arm extended underneath

---

[1]   The individual Defendants in this case include Minneapolis Police Officers Robert Elmers, Thomas Peterson, Timothy Savior, Jeffrey Miller, Aaron Morrison, and Michael Primozich.

Elmers's squad car, which was slowly rolling forward. (*Id.*) While the dog continued to have hold of Plaintiff by the leg, Elmers jumped into the vehicle and depressed the brake to stop the squad car from rolling over Plaintiff's arm. (*Id.*)

As Elmers leapt into the vehicle, however, his handgun fell to the ground approximately 1.5 feet from Plaintiff's hand. (Fussy Aff. ¶ 3, Ex. B at 11.) Elmers exited his vehicle after stopping it from rolling over Plaintiff, and shouted to the narcotics officer, who was pointing his gun at Plaintiff, that Elmers's weapon was on the ground. (*Id.*) Elmers then grabbed his handgun, picked it up, and looked back at Plaintiff. (*Id.*) As these events took place, the police dog continued to subdue Plaintiff by biting his leg. (*Id.*) After retrieving his weapon, Elmers ordered the police dog off Plaintiff and placed Plaintiff under arrest. (*Id.*)

Because the use of the police dog had caused injuries to Plaintiff's leg,[2] police determined that it was necessary to transport him to Hennepin County Medical Center for medical attention. (*Id.*) While transporting Plaintiff to the hospital, Defendants Morrison and Primozich stopped at a McDonald's to pick up lunch. (Doc. No. 28, Aff. of Tracey N. Fussy ("Second Fussy Aff.") ¶ 2, Ex. 1 at 3.) At that time, Morrison and Primozich were aware that Plaintiff needed medical attention. (*Id.*)

---

[2] Plaintiff's Complaint alleges that the police dog also bit him on the head (Doc. No. 1 at ¶ 6), and Plaintiff asserts, in his memorandum opposing summary judgment, that "deep wounds" were left on his leg and head as a result of the officers' use of the police dog. (Doc. No. 24, Pl.'s Mem. Opposing Defs.' Mot. for Summ. J. ("Pl.'s Mem.") 2.) Although Plaintiff has made these allegations that he was bitten on the head by the police dog, the record contains no evidence of bites to Plaintiff's head.

3

Plaintiff lodged a complaint with the Civilian Police Review Authority regarding Morrison and Primozich's conduct and also alleged that the officers used excessive force and inappropriate language during the arrest. (*Id.* ¶ 2, Ex. 1 at 1-3.) The civilian reviewer determined that there was insufficient evidence to sustain the excessive-force and inappropriate-language allegations, but that there was probable cause that Morrison and Primozich had engaged in inappropriate conduct for failure to provide adequate or timely police protection when stopping to pick up food while transporting Plaintiff to the hospital. (*Id.* at 1-2.) Following an evidentiary hearing, Morrison and Primozich were found to have violated police department policy for stopping to pick up food while taking Plaintiff to receive medical care. (*Id.* at 4.) No formal action was taken against Morrison and Primozich, however, because the officers did not act with malicious intent, Plaintiff's injuries were not life threatening, the officers had cooperated with the investigation, the officers acknowledged their judgment could have been better, and the officers both have good work records. (*Id.*) Morrison and Primozich received counseling by the disciplinary panel at the time of the panel meeting concerning their misconduct. (*Id.*)

## DISCUSSION

**I.   Summary Judgment Standard**

Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence, and the inferences that may be

reasonably drawn from the evidence, in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II. Insufficient Service of Process

Defendants first argue that Plaintiff has failed to provide sufficient service of process on any of the named Defendants. Defendants contend that the failure of Plaintiff to effect service of process on any of the named Defendants within the applicable period of the statute of limitations for Plaintiff's claims requires dismissal of those claims. Plaintiff has apparently conceded that service of

process was insufficient as to the individual Defendants.  (*See* Pl.'s Mem. 5.) Plaintiff argues, however, that he provided sufficient service of process on Defendant City of Minneapolis (the "City"), within the applicable limitations period. (*Id.* at 3.)  In support of this argument, Plaintiff has provided a corrected affidavit of the process server indicating that he personally served the clerk of the City of Minneapolis on April 18, 2007.

A party may move to dismiss claims brought against it for insufficiency of service of process under Rule 12 of the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 12(b)(5).  "Since the defense of improper service of process involves a matter in abatement and does not go to the merits of the action, it is technically not proper to raise it by a summary judgment motion."  5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1353 (3d ed. 2004). However, when the defense of service of process is timely raised in a defendant's answer, it is appropriate to deem the defendant's challenge to the sufficiency of service of process on summary judgment as an "application for dismissal under Rule 12(d) . . . ."  *See United States v. Marple Cmty. Record, Inc.*, 335 F. Supp. 95, 101 (D.C. Pa. 1971) (considering a defendant's motion for summary judgment on the ground of insufficient service of process).

"Proper service of process is necessary because, '[i]f a defendant is improperly served, a federal court lacks jurisdiction over the defendant.'"  *Roth v. Larson*, Civ. No. 06-4574 (MJD/JSM), 2008 WL 4527831, at *8 (D. Minn. Sept. 30, 2008).  Federal Rule of Civil Procedure 4(j) provides that service of process

can be effected upon a state or local government by "delivering a copy of the summons and complaint to its chief executive officer [or] serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant."

### 1. Service on Individual Defendants

As discussed above, Plaintiff has conceded that service of process on the individual Defendants was insufficient and that dismissal of the claims against those Defendants is appropriate because the statute of limitations has expired. (*See* Pl.'s Mem. 5 ("The defendant officers may escape liability regarding the state tort claims due to the expiration of the statute of limitations and service in this case but the city remains liable.").)  Even if Plaintiff had not conceded the issue, Plaintiff has made no showing that personal service or substitute service was effected as to the individual Defendants.  Therefore, this Court recommends that Defendants' Motion for Summary Judgment be granted to the extent it seeks to prevent claims against the individual Defendants in this case from going forward.  Thus, all four Counts in the Complaint should be dismissed against these Defendants.

### 2. Service on City of Minneapolis

Pursuant to Minnesota law, a plaintiff may serve "a municipal or other public corporation by delivering a copy [of the summons] [t]o the chief executive officer or to the clerk of a defendant city." Minn. R. Civ. P. 4.03(e)(2).  "Service of process in a manner not authorized by the rule is ineffective service." *Burns v.*

*Office of Attorney Gen.*, No. 05-CV-0858 (PJS/RLE), 2007 WL 2247600, at *6 (D. Minn. Aug. 2, 2007) (quoting *Lundgren v. Green*, 592 N.W.2d 888, 890 (Minn. Ct. App. 1999), *rev. denied* (Minn. July 28, 1999)).  The plaintiff "has the ultimate burden [of] establishing the validity of service of process." *Redding v. Hanlon*, Civ. No. 06-4575 (DWF/RLE), 2008 WL 762078, at *6 (quoting *A.C. ex rel. M.C. v. Ind. School Dist. No. 152*, 2006 WL 3227768, at *4 n. 4 (D. Minn. Nov.7, 2006)).

Plaintiff submitted an affidavit of personal service in an attempt to prove that service on the City was sufficient.  (Pl.'s Mem. at Ex. 1.)  Defendants have not contested whether that affidavit of personal service adequately demonstrates the sufficiency of service of process.  Thus, it appears that Defendants have abandoned their argument that service on the City was insufficient.  However, this Court need not determine this issue because it recommends granting Defendants' Motion for Summary Judgment on the merits of Planitiff's claim against the City, as is discussed below.

### III.  Plaintiff's 42 U.S.C. § 1983 Claim against the City of Minneapolis

Plaintiff's 42 U.S.C. § 1983 claim against the City is premised, in part, on the notion that the use of the police canine in his arrest constituted excessive force in violation of the Fourth Amendment.  In *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658 (1978), the Supreme Court held that a municipality is subject to liability under § 1983 only when the violation of a plaintiff's federally protected right can be attributable to the enforcement of a municipal policy, practice, or decision of a

8

final municipal policy maker.  "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  *Id.* at 694.  Municipalities cannot be held liable under § 1983 "unless action pursuant to official municipal policy of some nature caused a constitutional tort."  *Kuha v. City of Minnetonka*, 365 F.3d 590, 603 (8th Cir. 2003) (quoting *Monell*, 436 U.S. at 691).

Additionally, "[a] [m]unicipal policy is not unconstitutional if it might allow for unconstitutional conduct in some instances, but rather, such a policy is unconstitutional only if it requires its officer to act in such an unconstitutional manner."  *Feist v. Simonson*, 36 F. Supp. 2d 1136, 1149 (D. Minn. 1999) (citing *Handle v. City of Little Rock*, 772 F. Supp. 434, 438 (E.D. Ark. 1991)).  The absence of a pattern or custom of unconstitutional misconduct must end the court's inquiry.  *See Thelma D. ex rel. Delores A. v. Board of Education*, 934 F.2d 929, 933 (8th Cir. 1991).  The Eighth Circuit does not use "policy" and "custom" interchangeably.  *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999).  "[A] 'policy' is an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters."  *Id.*

    **A.**    **The City's canine policy is not facially unconstitutional**

Here, Plaintiff argues that the City's policy regarding the use of canines in the apprehension of suspects is unconstitutional on its face.  Specifically,

Plaintiff's Complaint and his memoranda opposing summary judgment raise concerns about the release of the canine involved in this case without providing advance warning to Plaintiff.

This Court finds that Plaintiff has failed to come forward with a showing that at the time of the incident, the City had a custom or policy regarding the use of canines that is facially unconstitutional. The record indicates that at the time of the incident described in Plaintiff's Complaint, the City of Minneapolis Police Department had an official policy regarding the use of canines. (Doc. No. 29, Aff. of Robert Skoro ("Skoro Aff.") ¶ 2.) The official policy in place during the 2001 incident involving Plaintiff was not memorialized in writing until 2002, but it remained substantially the same from 2001 through 2005. (*Id.* ¶¶ 2, 7-8.) This policy indicates that a verbal warning will be given prior to the release of a canine to apprehend a suspect, unless there are "circumstances that arise that make it unsafe for a canine handler to give a verbal warning if his/her safety is jeopardized." (*Id.* ¶ 8, Ex. 1 at 10.) The policy further provides that "[o]nly that amount of force necessary to reasonably achieve a lawful intended result should be used when deploying a police canine," (*Id.*), and that "[c]anines will not be used to punish or inflict unnecessary pain on suspects." (*Id.* at 13.)

It is undisputed that the policy was in place at the time of the incident. However, Plaintiff has not shown how that policy is facially unconstitutional. The City's policy that a warning should be provided except in circumstances where an officer's safety could be threatened "do[es] not affirmatively sanction the use of

10

the dogs in an unconstitutional manner." *See Szabla v. City of Brooklyn Park, Minn.*, 486 F.3d 385, 392 (8th Cir. 2007). Instead, unlike the policy at issue in *Szabla*, which the Eighth Circuit described as being "simply silent concerning the circumstances under which an officer should provide a warning before a canine is directed to bite and hold a suspect[,]" *see id.*, the City's policy here directed officers to provide such a warning. Therefore, even if this Court assumes that the officer was required by the Fourth Amendment to give a warning before using his dog to bite and hold Plaintiff, Plaintiff has presented no evidence that the City had a policy that violated that requirement on its face. *See Feist*, 36 F. Supp. 2d at 1149 (providing that a municipality's policy "is unconstitutional only if it requires its officer to act in . . . an unconstitutional manner").

> **B.    Plaintiff has not presented any evidence that the City has a custom of unconstitutionally using canines without providing a warning**

This Court also finds that Plaintiff has not presented any evidence establishing a genuine issue of material fact with respect to the existence of an unconstitutional custom of using canines without providing a warning. To establish an unconstitutional custom for a *Monell* claim, a plaintiff must show the following: (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the government entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) injury to the plaintiff by acts pursuant to that custom, i.e., proof that the custom was the

11

moving force behind the constitutional violation.  *Mettler*, 165 F.3d at 1204.  Plaintiff has failed to present a triable issue because he has provided no evidence of any continuing, widespread, persistent pattern of the use of canines by the City to apprehend suspects without providing a verbal warning prior to the canines' release.

> **C.** **Plaintiff has not provided any evidence that the City has an unconstitutional policy or custom of using canines in a racially discriminatory manner**

Plaintiff also appears to argue that the City of Minneapolis Police Department has a custom of using canines against African Americans based on their race.  (Doc. No. 39, Supplement to Pl.'s Mot. Opposing Defs.' Mot. for Summ. J. ("Pl.'s Suppl.") 1-2.)  Essentially, Plaintiff argues that the City has violated the Equal Protection Clause of the Fourteenth Amendment by discriminating against African Americans in the use of canine apprehensions on the basis of race.  Plaintiff has submitted two documents in support of this argument.  The first concerns the use of a canine by an officer in 2004, where, out of a total of eight canine-bite incidents, six involved African Americans.  (Doc. No. 40 at 1.)  The second is a Regions Hospital memorandum concerning the use of a canine in the apprehension of an African American man in April 2005.  (Doc. No. 40, Ex. 1.)  Based on these submissions, Plaintiff argues that the number of incidents involving the use of canines to bite African American suspects demonstrates a racially biased custom on the part of the City of

Minneapolis's Police Department given the "tiny fraction of the [city's] total population" made up of African Americans. (Pl.'s Suppl. 2.)

This Court finds that Plaintiff has failed to submit any evidence showing that at the time of the incident, the City of Minneapolis Police Department had a policy or custom of using canines in a racially discriminatory manner.[3] Construed in the light most favorable to the Plaintiff, the evidence he has presented does not create a genuine issue of fact regarding whether there existed any "widespread, persistent pattern of unconstitutional misconduct by the [City's] employees." *See Mettler*, 165 F.3d at 1204. Neither document submitted by Plaintiff establishes that the canines were used on the basis of the suspects' race; rather, they merely show that six out of the eight canine-bite incidents involving one officer involved African Americans and that another incident happened to involve an African American as well. Nothing in those documents supports an inference that the City targeted the use of canine-biting techniques against African American suspects on the basis of their race on a widespread, persistent basis.

In addition, all of the evidence submitted by Plaintiff concerns instances that occurred in 2004 and 2005. The incident upon which Plaintiff's § 1983 claim rests occurred in 2001. At this stage, to survive summary judgment, Plaintiff had to come forward with evidence from which a reasonable jury could conclude that

---

[3] It is also worth noting that Plaintiff did not plead any set of facts from which a claim of intentional racial discrimination could be inferred.

13

a custom of racial discrimination was the "moving force" behind the officers' use of the canine in an unconstitutional manner. See *Mettler*, 165 F.3d at 1204. Plaintiff cannot overcome summary judgment by presenting evidence that three and four years after the incident at issue, other canine-bite incidents occurred, because a reasonable jury could not conclude that the City was deliberately indifferent to or tacitly authorized the conduct at the time of the incident at issue. *Cf. Mettler*, 165 F.3d at 1205 (noting that "[e]vidence that a police department has failed to investigate *previous* incidents similar to the incident in question may support a finding that a municipal custom exists[,]") (emphasis added); *see also Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir. 1996) (affirming district court's grant of summary judgment where there was no evidence that the municipality had been deliberately indifferent to complaints received prior to the constitutional violations alleged in the plaintiff's complaint). Thus, Plaintiff has failed to present a triable issue that would impose *Monell* liability on the City based on a claim of racial discrimination in its police department's use of canines.

### D. Plaintiff has not provided any evidence that the City had an unconstitutional policy or custom permitting the officers' conduct in transporting him to the hospital

Plaintiff's Complaint raises concerns about the conduct of Officers Morrison and Primozich in stopping to pick up food for their lunches while transporting Plaintiff to the hospital for treatment of bite wounds he sustained during his arrest. (Doc. No. 1 at ¶ 13.) Plaintiff's submissions do not clearly address Defendants' arguments regarding the appropriateness of judgment as a

matter of law in Defendants' favor regarding a § 1983 claim against the City for Morrison and Primozich's behavior.  More importantly, however, Plaintiff has failed to come forward with any evidence demonstrating the existence of a policy or custom permitting their actions.  The evidence before this Court establishes only that the City had policies *prohibiting* officers from neglecting to provide necessary medical care or conducting personal business while on duty.  (Second Fussy Aff. ¶ 2, Ex. 1.)  Morrison and Primozich were disciplined for their conduct pursuant to such policies.  (*Id.*)  Thus, no reasonable jury could conclude from the evidence presented that the City had a policy or custom permitting unconstitutional conduct and summary judgment is appropriate.

## RECOMMENDATION

Based on the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. Defendants' Motion for Summary Judgment (Doc. No. 18), be **GRANTED**; and

2. This action be **DISMISSED WITH PREJUDICE**.

Date: April 27, 2009

       *s/ Jeffrey J. Keyes*
       JEFFREY J. KEYES
       United States Magistrate Judge

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **May 11, 2009**, a writing which specifically identifies those portions of this Report

to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under this rule shall be limited to 3500 words.  A judge shall make a de novo determination of those portions of the Report to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.